UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ABDUR RAHIYM-AMIR,

                                Plaintiff,

             v.                                              1:04-CV-121
                                                             (FJS/RFT)
BELLAMY OF CORINTH, INC.;
MICHAEL SMITH, as General Manager; and
MELISSA SMITH, as Assistant Manager,

                                Defendants.

_____

APPEARANCES                                        OF COUNSEL

DELORENZO LAW FIRM, LLP                            DANA M. BONIEWSKI, ESQ.
201 Nott Terrace
Schenectady, New York 12307
Attorneys for Plaintiff

BELLAMY OF CORINTH, INC.                           NO APPEARANCE
Defendant *pro se*

MICHAEL SMITH                                      NO APPEARANCE
Defendant *pro se*

MELISSA SMITH                                      NO APPEARANCE
Defendant *pro se*

SCULLIN, Senior Judge

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff's amended complaint contains the following three causes of action: (1) against all

Defendants for disparate treatment and hostile work environment based on gender pursuant to

Title VII and New York Executive Law ("New York Human Rights Law"); (2) against all

Defendants for retaliation pursuant to Title VII; and (3) against all Defendants for retaliation

pursuant to New York Human Rights Law. *See generally* Dkt. No. 22. Specifically, Plaintiff

alleges that he began working for Defendants on or about August 20, 2002, and that Defendants

terminated his employment on or about December 19, 2002, under circumstances giving rise to

an inference of discrimination. *See id.* at ¶¶ 13-14. He further contends that Defendant Melissa

Smith, who was the Assistant Manager, subjected him to discrimination by (1) touching his

buttocks and genitals on several occasions and (2) sending and/or giving him sexually explicit

letters. *See id.* at ¶ 17. Plaintiff also claims that this conduct created a hostile and/or abusive

working environment, that he complained to Defendant Michael Smith, the General Manager,

about Defendant Melissa Smith's conduct, and nothing was done, and that there was a causal

connection between his complaints and the termination of his employment. *See id.* at ¶¶ 21, 23-

24.

       The Court previously granted Plaintiff's motions for default judgment as to the issue of

liability against Defendant Bellamy of Corinth, Inc., *see* Dkt. No. 44, and against Defendants

Michael Smith and Melissa Smith, *see* Dkt. No. 60. The Court also instructed Plaintiff to file

papers in support of his request for damages. *See id.* It is Plaintiff's request for damages that is

currently before the Court.

## II. DISCUSSION

### A.    Rule 55(b) of the Federal Rules of Civil Procedure

       Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, in the context of a

default judgment, the court may conduct a hearing to determine damages or, "in lieu of a hearing,

[the court] may rely on detailed affidavits and documentary evidence, along with its own personal knowledge of the record." *Szatkowski v. Maxwell's Bar & Grill/RID Enters.*, No. 04-CV-6001, 2006 WL 1389772, *1 (W.D.N.Y. May 19, 2006) (citation omitted).  Whether or not the court decides to hold a hearing, "a court may not merely accept a plaintiff's statement as to damages.  Rather, a court must take the necessary steps to establish damages with reasonable certainty." *Id.* (citation omitted).

In this case, Plaintiff has submitted a detailed affidavit in support of his request for damages.  In that affidavit, he states that, as a result of Defendants' actions, the Court should award him the following amounts:

> 1. An amount sufficient to punish both Michael and Melissa Smith for their contempt of this Court's Orders, including sanctions for the same
>
> 2. Lost wages from December 19, 2002 (date of wrongful termination) through approximately October 23, 2003 (date of recent incarceration).  (I was employed by defendants at IHOP as a night cook earning approximately $10.00 per hour, with no other benefits, and worked approximately 40 hours per week which equals $400.00 per week for 44 weeks)
>
> **$17,600.00**
>
> 3. An amount for pain and suffering (plaintiff lost his self-worth, self-esteem and began using drugs again, which ultimately caused him to be incarcerated again which also lead [sic] to him not being able to see his childred. [sic] Plaintiff had nightmares, felt ashamed and was both physically and mentally stressed)
>
> **$50,000.00**
>
> 4. Amount for medical expenses (This expense was incurred at a rehabilitation center known as Altamont House, Route 156, P.O. Box D-2, Altamont, NY)
>
> **$40,000.00**
>
> 5. An amount as follows for the loss of my possessions which I

was forced to sell to take care of my family and myself:

| | |
|---|---|
| – sale of all jewelry worth | $ 3,700.00 |
| – sale of my wedding rings and my girlfriend's engagement ring valued at | $ 3,600.00 |
| – sale of 2 TVs valued at | $ 2,700.00 |
| – sale of RCA surround sound system valued at | $   600.00 |
| – sale of stereo system valued at | $ 3,900.00 |
| – sale of car stereo/speaker/amp system valued at | $ 2,700.00 |
| – sale of car itself with book value of | $ 9,000.00 |
| – sale of clown collection valued at | $ 5,000.00 |
| – use of credit cards for living expenses | $10,000.00 |
| – money borrowed from friends and family for living expenses to be paid back | $   700.00 |
| – credit in food store for food for family and myself to be paid back | $   900.00 |
| – credit in clothing store for clothes for family and myself | $   700.00 |
| – use of money in all my checking acct. | $ 3,000.00 |
| **TOTAL** | **$46,500.00** |

6. Attorneys' fees in the amount of

**$10,027.00**

*See* Plaintiff's Affidavit in Support of Damages, sworn to December 7, 2006 ("Plaintiff's Aff."), at ¶ 5.

Based upon Plaintiff's affidavit, the entire record, and the Court's knowledge of this case, the Court has determined that it is not necessary to conduct a hearing to determine the appropriate amount of damages in this case.

## B.      Damages under Title VII and New York Human Rights Law

### 1. Preliminary matters

Although Plaintiff does not specifically identify Defendant Bellamy of Corinth, Inc. as his employer, based upon the allegations in his amended complaint and Defendant Bellamy of Corinth, Inc.'s failure to respond to the complaint, thereby conceding liability, the Court assumes,

for purposes of this action, that Defendant Bellamy of Corinth, Inc. was Plaintiff's employer

during the time at issue in this case.  Plaintiff also contends that Defendant Melissa Smith was

the Assistant Manager of the IHOP restaurant where he worked and that Defendant Michael

Smith was the General Manager of the same restaurant.  *See* Complaint at ¶¶ 15-16.

Based upon these factual allegations, it is clear that, as a matter of law, Plaintiff can only

recover compensatory and punitive damages against Defendant Bellamy of Corinth, Inc. on his

Title VII claims.  *See Szatkowski*, 2006 WL 1389772, at *4 (citing *Mandell v. County of Suffolk*,

316 F.3d 368, 377 (2d Cir. 2003) (holding that "the district court's dismissal of plaintiff's Title

VII claims against Gallagher in his personal capacity must be affirmed because under Title VII

individual supervisors are not subject to liability")) (footnote omitted).

On the other hand, because Plaintiff has alleged that Defendant Melissa Smith sexually

harassed him and Defendant Michael Smith retaliated against him when he complained about the

harassment, Plaintiff can recover compensatory damages against both of these Defendants

pursuant to New York Human Rights Law § 296(6) for aiding and abetting his employer in

discriminating against him.  *See* N.Y. Exec. Law § 296(6) (providing that "[i]t shall be an

unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of

any of the acts forbidden under this article, or to attempt to do so").  However, New York Human

Rights Law "does not allow for the recovery of punitive damages." *Szatkowski*, 2006 WL

1389772, at *4 (citing *Thoreson v. Penthouse Intern., Ltd.*, 80 N.Y.2d 490, 499 (1992)).

Therefore, punitive damages are available to Plaintiff only on his Title VII claims and only

against Defendant Bellamy of Corinth, Inc.

### *2. Award of back pay under Title VII against Defendant Bellamy of Corinth, Inc.*

"A plaintiff successful in a Title VII suit is entitled to an award of back pay." *Whitten v. Cross Garage Corp.*, No. 00 Civ. 5333, 2003 WL 21744088, *3 (S.D.N.Y. July 9, 2003) (citing 42 U.S.C. § 2000e-5(g)(1)). "'An award of [back pay] is the rule, not the exception.'" *Id.* (quotation omitted). "Title VII plaintiffs are entitled to back pay from the date of termination until the date of judgment, as well as prejudgement interest on the back pay award." *Id.* (citation omitted).

In this case, Plaintiff seeks back pay from the date of his termination, December 19, 2002, until October 23, 2003, the date of his recent incarceration. *See* Plaintiff's Aff. at ¶ 5(b). At the time Defendants terminated his employment, Plaintiff was earning $10 per hour and worked forty hours per week. From the date of his termination until October 23, 2003, is forty-four weeks. Therefore, the Court awards Plaintiff **$17,600** in back pay against Defendant Bellamy of Corinth, Inc.

In addition, it is within the court's discretion to determine the rate at which prejudgment interest should be calculated. *See Whitten*, 2003 WL 21744088, at *4 (citation omitted). "Many courts in this circuit have set the prejudgment interest rate at the United States 52-week treasury bill rate referred to in 28 U.S.C. § 1961(a)." *Walia v. Vivek Purmasir & Assocs., Inc.*, 160 F. Supp. 2d 380, 388-89 (E.D.N.Y. 2000) (citing cases). This interest rate "'adequately ensures that the plaintiff is sufficiently, but not overly, compensated.'" *Id.* at 389 (quotation omitted). Therefore, the Court awards Plaintiff prejudgment interest at the average annual United States treasury bill rate applicable to the period from December 19, 2002, until the date on which the Clerk of the Court enters judgment in this case.

### 3. *Compensatory damages under Title VII and New York Human Rights Law*

"Under Title VII, a court may . . . award a sum of money as compensation for 'emotional

pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary

losses.'" *Whitten*, 2003 WL 21744088, at *5 (quoting 42 U.S.C. § 1981a(b)(3)).  However, "Title

VII imposes a cap on the maximum compensatory and punitive damage award that a plaintiff can

recover which is based on the size of the employer's staff."  *Id.*  Section 1981a(b)(3) of Title 42

of the United States Code provides that

> [t]he sum of the amount of compensatory damages awarded under
> this section for future pecuniary losses, emotional pain, suffering,
> inconvenience, mental anguish, loss of enjoyment of life, and other
> nonpecuniary losses, and the amount of punitive damages awarded
> under this section, shall not exceed, for such complaining party –
> (A) **in the case of a respondent who has more than 14 and
> fewer than 101 employees in each of 20 or more calendar weeks
> in the current or preceding calendar year, $50,000 . . . .**

42 U.S.C. § 1981a(b)(3) (emphasis added).

In this case, Plaintiff does not allege the exact number of employees whom Defendant

Bellamy of Corinth, Inc. employed during the relevant time period, other than to state that "the

defendants employed the requisite number of employees as required by both Title VII and the

New York State Executive Law," *see* Dkt. No. 22 at ¶ 29, and that "the defendants employed

fifteen (15) or more employees," *see id.* at ¶ 54, and that "defendants employed more than three

(3) employees," *see id.* at ¶ 60.  Since Plaintiff did not specify the number of employees, the

Court will assume that Defendant Bellamy of Corinth, Inc. employed fewer than 101 employees

and that, therefore, at most, Plaintiff could receive an award of $50,000 in compensatory and

punitive damages under Title VII.

Unlike Title VII, there is no limitation on an award of compensatory damages under New York Human Rights Law. *See Whitten*, 2003 WL 21744088, at \*5. Therefore, "the court, in its discretion, can divide the award of compensatory and punitive damages between Title VII and the [New York Human Rights Law] in such a way as to maximize plaintiff's overall recovery." *Walia*, 160 F. Supp. 2d at 391.

"In awarding compensatory damages for anguish and humiliation, the New York courts have held that the plaintiff may prove such damages through [his] own testimony 'corroborated by reference to the circumstances of the alleged misconduct.'" *Id.* at 390 (quotation omitted). Moreover, courts have held that "[c]ompensatory damages for mental anguish should be awarded in an amount that fairly compensates the victim of discrimination for [his] injuries." *Id.* (citation omitted). When deciding upon the correct amount to award, courts "'have considered the duration, severity, consequences and physical manifestations of the mental anguish, as well as any treatment that plaintiff underwent as a result of [his] anguish.'" *Id.* (quotation omitted).

According to the allegations in Plaintiff's amended complaint, he worked for Defendant Bellamy of Corinth, Inc. for four months – from August 20, 2002, until December 19, 2002. *See* Dkt. No. 22 at ¶¶ 13-14. During that time, he asserts that Defendant Melissa Smith touched his buttocks and genitals on several occasions and sent and/or gave him sexually explicit letters, four of which he attached to his affidavit in support of damages. He also claims that he complained about this conduct to both Defendant Melissa Smith and Defendant Michael Smith and that, as a result of his complaint, Defendant Michael Smith retaliated against him by terminating his employment.

As a result of this conduct, Plaintiff asserts, in his affidavit, that he has "lost his self-

worth, self-esteem and began using drugs again, which ultimately caused him to be incarcerated again which also lead [sic] to him not being able to see his childred [sic]." *See* Plaintiff's Aff. at ¶ 5(c).  He also contends that he had "nightmares, felt ashamed and was both physically and mentally stressed." *See id.*  For these injuries, Plaintiff seeks $50,000.00. *See id.*  In addition, Plaintiff seeks $40,000.00 in medical expenses "incurred at a rehabilitation center known as Altamont House, Route 156, P.O. Box D-2, Altamont, NY." *See id.* at ¶ 5(d).

Plaintiff was employed at the restaurant for a relatively short period of time.  In addition, other than the four letters that he claims Defendant Melissa Smith sent to him and the "several" times that she touched his buttocks and genitals, Plaintiff does not provide any details about the frequency of the harassment or how often he complained to management about this behavior. Moreover, the Court rejects Plaintiff's assertion that Defendants' conduct caused him to return to using drugs, which in turn caused him to seek treatment.  Although Defendants' actions may have caused Plaintiff to lose his self-esteem and to have nightmares, it was his own conduct, i.e., his decision to use drugs, that led him to incur rehabilitation expenses at the Altamont House. Therefore, viewing the circumstances in their entirety, including the nature and extent of the injuries that Plaintiff suffered that can be reasonably attributed to Defendants' conduct, the Court awards Plaintiff **$10,000.00** in compensatory damages, **$2,000.00** against Defendant Bellamy of Corinth, Inc. under Title VII,[1] and **$8,000.00** against Defendants Melissa Smith and Michael

---

[1] Since Plaintiff's claims and the injuries he suffered are the same under both Title VII and New York Human Rights Law and he can only recover once for the same injuries, the Court has divided the total amount of damages to maximize Plaintiff's overall recovery.

Smith, jointly and severally, under New York Human Rights Law.[2]

### 4. Attorney's fees and costs under Title VII[3]

A prevailing plaintiff under Title VII is entitled to recover reasonable attorney's fees and

costs.  *See* 42 U.S.C. § 2000e-5(k).  The court determines reasonable attorney's fees by using the

lodestar method, which involves multiplying the number of hours that the plaintiff's attorney

spends on the matter by a reasonable hourly rate.  *See Whitten*, 2003 WL 21744088, at *6

(citation omitted).  When a party seeks an award of attorney's fees, he must support his request

with contemporaneous time records that show "'for each attorney, the date, the hours expended,

and the nature of the work done.'"  *Id.* (quotation omitted).  Moreover, a court can "deduct hours

from the lodestar calculation if it finds that the hours charged are superfluous or unreasonable."

*Id.* (citation omitted).

The Second Circuit has "suggest[ed] that the district court consider, in setting the

reasonable hourly rate it uses to calculate the 'lodestar,' what a reasonable, paying client would be

willing to pay . . . ."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,

493 F.3d 110, 112 (2d Cir. 2007).  Moreover, the district court should

> bear in mind *all* of the case-specific variables that [the Second
> Circuit] and other courts have identified as relevant to the

---

[2] Although Plaintiff requested punitive damages in his amended complaint, he did not
explicitly request such damages in his affidavit.  Moreover, having reviewed the allegations as
well as Plaintiff's recitation of his injuries, the Court concludes that an award of punitive
damages against Defendant Bellamy of Corinth, Inc. is not warranted.

[3] New York Human Rights Law does not provide for an award of attorney's fees to a
prevailing party.  *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997)
(citation omitted).

> reasonableness of attorney's fees in setting a reasonable hourly rate.
> . . . In determining what rate a paying client would be willing to
> pay, the district court should consider, among others, the *Johnson*
> factors;[4] it should also bear in mind that a reasonable, paying client
> wishes to spend the minimum necessary to litigate the case
> effectively.  The district court should also consider that such an
> individual might be able to negotiate with his or her attorneys,
> using their desire to obtain the reputational benefits that might
> accrue from being associated with the case.  The district court
> should then use that reasonable hourly rate to calculate what can
> properly be termed the "presumptively reasonable fee."

*Id.* at 117-18.

Recently, this Court determined, based upon these factors, that the reasonable hourly rates

in this District, i.e., what a reasonable, paying client would be willing to pay, are $210 per hour

for an experienced attorney, $150 per hour for an attorney with four or more years experience,

and $120 per hour for an attorney with less than four years experience.  *See New Paltz Cent. Sch.*

*Dist. v. St. Pierre*, No. 1:02-CV-981, 2007 WL 655603, *2 (N.D.N.Y. Feb. 26, 2007).

Although Plaintiff submitted contemporaneous time records for Thomas DeLorenzo, Esq.

---

[4] In *Arbor Hill Concerned Citizens Neighborhood Ass'n*, the Second Circuit set out the
twelve *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary hourly rate; (6)
> whether the fee is fixed or contingent; (7) the time limitations
> imposed by the client or the circumstances; (8) the amount
> involved in the case and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the "undesirability" of
> the case; (11) the nature and length of the professional relationship
> with the client; and (12) awards in similar cases. *Johnson*, 488
> F.2d at 717-19.

*Arbor Hill Concerned Citizens Neighborhood Ass'n*, 493 F.3d at 114 n.3.

and Dana Boniewski, Esq., he did not provide any information about their years of experience. However, using the internet, the Court was able to determine that Mr. DeLorenzo was admitted to the bar in 1959 and that Ms. Boniewski was admitted to the bar in 2001.  According to the time records, both attorneys charged Plaintiff $200 per hour for their work.  Based upon their years of experience, however, the Court finds that, although $200 per hour is an appropriate hourly rate for Mr. DeLorenzo's work, $150 per hour is the appropriate hourly rate for Ms. Boniewski's work.

As noted above, only Defendant Bellamy of Corinth, Inc. can be held liable to Plaintiff under Title VII.  Therefore, Defendant Bellamy of Corinth, Inc. must bear the full brunt of any award of attorney's fees.  Although in most cases, if the Title VII and New York Human Rights Law claims are intertwined, as they appear to be in this case, the court can award attorney's fees without having to parse the work that the attorneys expended on the Title VII claims from the work that they expended on the New York Human Rights Law claims, to do so in this case would be unfair.

Defendant Bellamy of Corinth, Inc. was a Defendant in this case for only a very limited period of time – from August 19, 2004, when Plaintiff filed his amended complaint and for the first time named Bellamy of Corinth, Inc. as a Defendant, *see* Dkt. No. 22, until January 31, 2005, the date on which the Court granted Plaintiff's motion for a default judgment against this Defendant, *see* Dkt. No. 44.  Thus, the Court holds that Defendant Bellamy of Corinth, Inc. is, at most, liable for the attorney's fees that Plaintiff incurred in this case during that time period. Reviewing the contemporaneous time records, the Court finds that this amounts to 17.25 hours of work that Ms. Boniewski expended on this case at the hourly rate of $150 for a total of

$2,587.50.  However, the Court concludes that a further reduction is necessary because 6.75 of

those hours clearly involve work that does not pertain to Defendant Bellamy of Corinth, Inc.

Therefore, the Court awards Plaintiff **$1,575** in attorney's fees against Defendant Bellamy of

Corinth, Inc.


### 5. *Sanctions*

Defendants Michael Smith and Melissa Smith did not attend their depositions even

though they received adequate notice of the same and the Court ordered them to appear as well as

to respond to Plaintiff's discovery requests.  As a result of their failure to comply with the Court's

orders and to engage in the discovery process, the Court awards Plaintiff sanctions against these

Defendants in the amount of **$637.50**.[5]

---

[5] The award of $637.50 reimburses Plaintiff for the 4.25 hours that Ms. Boniewski
expended on the following tasks: (1) preparing the first notice of deposition (.5 hours); (2)
attending a deposition at which Defendants Melissa Smith and Michael Smith failed to appear
(.25 hours); (3) preparing a letter to the Smiths (.25 hours); (4) preparing a motion to compel (1
hour); (5) preparing a second notice of deposition (.5 hours); (6) preparing a letter to the Smiths
(.25 hours); (7) preparing a third notice of deposition (.5 hours); and (8) preparing a motion for
sanctions (1 hour).

*6. Costs*

Plaintiff, as a prevailing party, is also entitled to recover the costs associated with the following items:

|  |  |
|---|---|
| (1) filing the complaint | $150.00 |
| (2) photocopy fee | $ 25.00 |
| (3) postage fee | $  2.00 |
| (4) stenographer – certificate of non-appearance | $100.00 |
| **Total** | **$277.00** |

Therefore, the Court awards Plaintiff costs in the amount of **$277.00** against all Defendants. However, because the $100.00 expense pertains only Defendants Melissa Smith and Michael Smith, all Defendants are jointly and severally liable for **$177.00** in expenses and Defendants Melissa Smith and Michael Smith are jointly and severally liable for an additional **$100.00** in expenses.

### III. CONCLUSION

After carefully considering the entire file in this matter, Plaintiff's submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment against Defendant Bellamy of Corinth, Inc. in the amount of **$19,600** for compensatory damages and back pay on Plaintiff's Title VII claims, as well as prejudgment interest on this amount at the average annual United States treasury bill rate applicable to the period from December 19, 2002, until the date on which the Clerk of the Court enters judgment; and the Court further

**ORDERS** that the Clerk of the Court shall include in the judgment against Defendant

Bellamy of Corinth, Inc. the additional amount of **$1,575.00** in attorney's fees on Plaintiff's Title VII claims; and the Court further

**ORDERS** that the Clerk of the Court shall include in the judgment against Defendant Bellamy of Corinth, Inc. the additional amount of **$177.00** in costs, for which Defendant Bellamy of Corinth, Inc. is jointly and severally liable with Defendants Melissa Smith and Michael Smith; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment against Defendants Melissa Smith and Michael Smith, jointly and severally, in the amount of **$8,000.00** for compensatory damages on Plaintiff's New York Human Rights Law claims; and the Court further

**ORDERS** that the Clerk of the Court shall include in the judgment against Defendants Melissa Smith and Michael Smith, jointly and severally, the additional amount of **$637.50** in sanctions for their failure to comply with this Court's orders and to engage in the discovery process; and the Court further

**ORDERS** that the Clerk of the Court shall include in the judgment against Defendants Melissa Smith and Michael Smith, jointly and severally, the additional amount of **$277.00** in costs, **$177.00** of which these Defendants are jointly and severally liable with Defendant Bellamy of Corinth, Inc.

**IT IS SO ORDERED.**

Dated: December 26, 2007
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

-15-